**Triple J. Saipan, Inc.**, dba Thrifty Car Rental, et al., Plaintiffs/Appellants,

v.

Sylvestre R. **Rasiang**, et al., Defendants/Appellees.
Appeal No. 97-032
Civil Action No. 90-0579 and consolidated cases (C.A. Nos. 92-0133, 92-201, 92-985, and S.C. No. 94-2234)
March 17, 1999

Argued and Submitted September 29, 1998

Counsel for appellants: Michael A. White, Saipan. (White Pierce Mailman & Nutting)

Counsel for appellees: Tom Schweiger, Micronesian Legal Services Corporation, Saipan.

BEFORE: DEMAPAN, Associate Justice, ONERHEIM and TAYLOR[1], Justices Pro Tem.

TAYLOR, Justice Pro Tem:

¶1 ■ Triple J. Saipan, Inc., dba Thrifty Car Rental ("Triple J") appeals the trial court's September 4, 1997, order vacating a writ of execution. We have jurisdiction pursuant to 1 CMC § 3102 and Article IV, section 3 of the Commonwealth Constitution. N.M.I. Const. art. IV, § 3 (1997). We affirm.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

¶2 ■ The following issues are presented for our review:

(1) Whether the trial court erred in concluding that Lot 010 K 185 ("Lot 185") is statutorily exempt from attachment and execution, pursuant to 7 CMC § 4210. A trial court's interpretation of a statute is subject to de novo review. *Commonwealth v. Cabrera*, 4 N.M.I. 240, 250 (1995).

(2) Whether the trial court erred in concluding that the Commonwealth Constitution prohibits the

issuance of a writ of execution upon Lot 185. A question involving the interpretation and application of the N.M.I. Constitution or the U.S. Constitution is reviewed de novo. *Commonwealth v. Bergonia*, 3 N.M.I. 22, 35 (1992).

## FACTS AND PROCEDURAL BACKGROUND

¶3 On May 11, 1994, the trial court granted the plaintiffs' motion to consolidate five default judgments against Consolacion S. Rasiang ("Consolacion") and/or Sylvestre R. Rasiang ("Sylvestre") for various unpaid balances, loans and promissory notes.[2] Judgments were entered against one or both of the Rasiangs. On July 4, 1994, Sylvestre was ordered to make payments on the consolidated judgments at the rate of $300 per month. He failed to make any payments, and the creditors subsequently filed civil contempt charges against him. At the contempt hearing held on September 18, 1995, Sylvestre produced a quitclaim deed for the Rasiangs' homestead, Lot 185, located in Koblerville, Saipan.[3]

¶4 On September 20, 1995, the trial court entered a Writ of Execution against Sylvestre, and ordered that Lot 185 be sold to satisfy the balances due upon the consolidated

---

[1] The Honorable Marty W.K. Taylor was sitting as Chief Justice when this appeal was argued and submitted. and has since been appointed Justice Pro Tem following his retirement from the Court.

[2] Civil Action No. 90-0579, *Triple J Saipan, Inc. v. Sylvestre Rasiang*, filed June 21, 1990, involved an unpaid balance due for a car rental. After Mr. Rasiang failed to file an answer after being served on June 27, 1990, a default judgment was entered against him in the amount of $4,902.48 on August 29, 1990.

Civil Action No. 92-0133, *Edward W. Camacho et al. v. Consolacion S. Rasiang and Sylvestre R. Rasiang*, filed February 28, 1992, involved a default on two loans. Both defendants failed to file an answer after being served on March 5, 1992. On April 3, 1992, default judgment were entered against Consolacion Rasiang in the amount of $14,781.64, and against Sylvestre Rasiang in the amount of $2,570.

Civil Action No. 92-0201, *Gabriel F. Boyer v. Sylvestre R. Rasiang*, filed February 28, 1992, involved a delinquent promissory note. Mr. Rasiang failed to file an answer after being served on March 5, 1992, and a default judgment was entered against him in the amount of $4,720 on July 9, 1992.

Civil Action No. 92-0985, *Sam Clack v. Sylvestre R. Rasiang*, filed August 13, 1992, involved a series of delinquent loans. Mr. Rasiang was served on September 9, 1992, but he did not file an answer. On October 14, 1992, a default judgment was entered against him in the amount of $2,060.

Small Claims Action No. 94-2234, *J.C. Tenorio Enterprises, Inc. v. Sylvestre Rasiang and Consolacion Rasiang*, filed October 4, 1994, involved a collection of payment of unspecified merchandise. It is not clear from the record whether this case was consolidated with the other actions. However, the judgment entered in this small claims matter was paid in full, and is not relevant to this appeal.

[3] The Rasiangs acquired Lot 185 from the Marianas Public Land Corporation on November 13, 1991.

judgments. Excerpts of Record ("E.R.") at 13. However, it was subsequently revealed that on September 7, 1994, the Rasiangs had executed a ground lease by which they leased Lot 185 to Karl T. Reyes ("Reyes"), for a total rental of $4,000, for a term of 75 years. Accordingly, on October 13, 1995, Triple J brought a declaratory relief action against Reyes, seeking to have the trial court declare that Reyes' leasehold was void and that he had no interest in Lot 185, in that the ground lease violated certain restrictions in the quitclaim deed, as well as the rules and regulations regarding the Village Homesteading Act of 1979. During the pendency of the declaratory relief action, Sylvestre died on May 30, 1996. The court granted Triple J's requested relief on October 17, 1996. *Triple J Saipan, Inc. v. Karl T. Reyes*, Civil Action No. 95-0951 (N.M.I. Super. Ct. Oct. 17, 1996) (Order Granting Plaintiff's Motion for Judgment on the Pleadings).

¶5 In a separate order, also dated October 17, 1996, the trial court expressed concern that the same restrictions on the sale or lease of Lot 185 might also apply to the judicial sale of homestead property to satisfy debts owed to third party creditors. The court therefore ordered a partial stay of the writ of execution and ordered the parties to further brief the issue.[4] *Triple J. Saipan, Inc. v. Sylvestre Rasiang*, Civil Action No. 90-0579 and consolidated cases (N.M.I. Super. Ct. Oct. 17, 1996) (Order For Partial Stay of Writ of Execution and for Further Briefing).

¶6 On December 2, 1996, Consolacion, on her own behalf and on behalf of the estate of Sylvestre Rasiang, filed a motion to vacate the writ of execution. The trial court granted Consolacion's motion, finding that Lot 185 was statutorily exempt from attachment and execution under 7 CMC § 4210(c), and that Article XI, § 5(a) of the CNMI Constitution prohibited the issuance of a writ of execution against the lot. *Triple J Saipan, Inc. v. Sylvestre R. Rasiang*, Civil Action No. 90-0579 and consolidated cases (N.M.I. Super. Ct. Sept. 4, 1997) (Decision and Order) ("order"). From this order, Triple J timely appealed.

## ANALYSIS

### I. Whether the trial court erred in concluding that Lot 010 K 185 is statutorily exempt from attachment and execution, pursuant to 7 CMC § 4210.

¶7 The Commonwealth Code provides in relevant part:

The following described property is exempt from attachment and execution:

* * *

(c) *Land and Interests in Land:* All interests in land, but any interest owned solely by a judgment debtor, in his or her own right, may be ordered sold or transferred under an order in aid of judgment if the court making the order deems that justice so requires and finds as a fact that after the sale or transfer, the debtor will have sufficient land remaining to support himself or herself and those persons directly dependent on the debtor according to recognized local custom and the law of the Commonwealth. . . .

7 CMC § 4210(c).

¶8 Triple J contends that the trial court's conclusion that Lot 185 is exempt from attachment and execution under 7 CMC § 4210 was erroneous because each of the Rasiangs did own an interest in Lot 185 in his or her own right that could be ordered sold. The parties agree that the Rasiangs owned the property as tenants in common. Therefore, Triple J argues that each interest is severable from the interest owned by the other.

■ A tenancy in common is a form of concurrent ownership whereby two or more persons hold the same property at the same time. THOMPSON ON REAL PROPERTY, § 32.02 (1994). Each tenant (i.e., owner) holds an undivided interest in the property. BLACK'S LAW DICTIONARY 1465 (6th Ed. 1990). Each tenant's interest in the concurrent estate is alienable, devisable and inheritable. THOMPSON ON REAL PROPERTY, § 32.02. Thus, as tenants in common, either of the Rasiangs could have sold their separate interests in the lot. *Manglona v. Kaipat*, 3 N.M.I. 322, 333 (1992) (noting that either tenant in common may petition Superior Court for partition of property with respect to his or her one-half interest).

¶9 ■ Although we agree with Triple J that each of the Rasiangs owned an interest in the property in his or her own right, we do not find that 7 CMC § 4210(c) automatically requires such an interest to be ordered sold under an order in aid of judgment. As the trial court correctly noted, under the statute, the court must exercise its discretion and the interest in land "*may* be ordered sold or transferred . . . *if* the court making the order deems that justice so requires and finds as a fact that after the sale or transfer, the debtor will have sufficient land remaining to support himself or herself . . . ." 7 CMC § 4210(c) (emphases added). Accordingly, it was well within the trial court's discretion to decline to order the interest in land sold under an order in aid of judgment. We therefore find that, despite its inaccurate finding that neither of the Rasiangs owned an interest in land in his or her own right, the trial court did not err in refusing to order Lot 185 sold

---

[4] The Superior Court also invited Mr. Thomas Clifford, Assistant Attorney General, to participate in the matter.

under 7 CMC § 4210(c).[5]

## II. Whether the trial court erred in concluding that the Commonwealth Constitution prohibits the issuance of a writ of execution upon Lot 185.

¶10 Article XI, Section 5(a) of the Commonwealth Constitution provides in relevant part:

> [a] person . . . may not transfer a freehold interest in a homestead for ten years after receipt except that these requirements are waived for persons who have established a continuous use of public lands for at least fifteen years as of the effective date of this Constitution. At any time after receiving the freehold interest, the grantee may mortgage the land provided that all funds received from the mortgagee be devoted to the improvement of the land.

N.M.I. Const. art. XI, § 5(a).

Triple J contends that this language only prohibits transfers *by the homesteader*, and thus the provision only applies to voluntary transfers. Unless the language specifically mentions involuntary transfers, Triple J maintains that an involuntary transfer of property does not violate a provision prohibiting transfers. Triple J further argues that since the Constitution expressly permits the grantee of homestead land to mortgage the land, an involuntary transfer by judicial sale on behalf of a third party creditor is not constitutionally objectionable. We disagree.

¶11 As the trial court noted, the only exception to the constitutional prohibition against transfers of homestead property within ten years after receipt is that the land may be mortgaged if the sole purpose is to improve the land. It was the intent of the framers of the Constitution to allow homesteaders who lack financial means to seek financing by way of mortgage so that they could make improvements to their property, and at the same time provide the necessary security to lenders. No other exceptions are expressly mentioned in the Constitution.

¶12 Further, Triple J's analogy to transfers of property by intestate succession, which are necessarily involuntary yet not constitutionally prohibited, is misplaced. Legislative history indicates that the word "transfer" in this context refers to sale:

> A person who is granted a freehold interest in a homestead must hold it for ten years after receiving the interest before the homestead may be transferred. *Transfer in this provision means sale.* It does not include transfer by inheritance or mortgage.

ANALYSIS OF THE CONSTITUTION OF THE NORTHERN MARIANA ISLANDS at 153 (1976) (emphasis added).

¶13 ■ Thus, it is clear that the type of prohibited transfers contemplated by Article XI, section 5(a) are sales, and a transfer of homestead property by inheritance is not similar to other involuntary transfers such as by judicial sale. Moreover, if the framers of the Commonwealth Constitution had wished to prohibit only voluntary transfers, they could have done so expressly. In the absence of legislative intent to the contrary, we find that the word "transfer" in this context encompasses both voluntary and involuntary transfers.

¶14 ■ We also find persuasive that the Division of Public Lands filed a brief in the trial court, arguing that homestead lots are not subject to writs of execution within the ten year period after issuance of the quitclaim deed. In construing legislation, the court may consult legislative history and the interpretation of an administering agency. *Camacho v. Northern Marianas Retirement Fund*, 1 N.M.I. 362, 369 n.5 (1990) (citation omitted).[6] As the successor to the Marianas Public Land Corporation, the Division of Public Lands "is vested with the authority to determine the nature of the interest transferred to a homestead grantee." *Estate of Faisao v. Tenorio*, 4 N.M.I. 260, 266 n.16 (1995). Accordingly, we find the administering agency's interpretation highly persuasive.

¶15 ■ Finally, we agree with the trial court that adopting Triple J's interpretation of Article XI, Section 5(a) would be inconsistent with the purpose behind the enactment of the Village Homestead Act of 1979.[7] Otherwise, anyone without land, or unable to afford land, would be effectively prohibited from acquiring a homestead lot if they had any outstanding debts since a judgment creditor could always acquire a writ of execution against the homestead. We therefore hold that homestead lots may not be transferred by judicial sale within the ten year period after receipt of the homestead.

## CONCLUSION

---

[5] "A trial court decision should be affirmed if the result is correct, even though the court relied upon a wrong ground or the judgment or order complained of contains an inaccurate or erroneous declaration of law." *In Re the Estate of Joaquin Concepcion Dela Cruz*, 2 N.M.I. 1, 16 n.10 (1991) (citations omitted).

[6] The general principles of statutory construction apply equally to constitutional construction. *Id.* at 368 (citing *Pangelinan v. CNMI*, 2 CR 1148, 1161 (D.N.M.I. App. Div. 1987)).

[7] The purpose of the Homestead Act is to "establish the Northern Mariana Islands village homesteading program for Commonwealth residents who are without village lots and do not have the means to acquire village lots." 2 CMC § 4332(c).

¶16    For the reasons stated above, we hereby **AFFIRM** the trial court's September 4, 1997 order vacating the writ of execution.

